# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>LESLIE GOCHA,<br><br>    Defendant. | No. CR07-2006-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

_____

On April 19, 2007, the grand jury returned a Superseding Indictment charging the defendant Leslie Gocha with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846; being an unlawful user of controlled substances in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3); and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (*See* Doc. No. 13, Superseding Indictment.) On June 1, 2007, Gocha filed a motion to suppress and a request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). (Doc. No. 22.) The plaintiff (the "Government") resisted the motion on June 16, 2007. (Doc. No. 26.)

The trial management order in this case assigned motions to suppress to the undersigned for consideration, the holding of any necessary hearings, and the filing of a report and recommended disposition. (Doc. No. 7, § IV.A.) Accordingly, the court held a hearing on the motion on June 25, 2007, at which Assistant U.S. Attorney C.J. Williams represented the Government, and Gocha was present in person with his attorney, Leon F. Spies. The Government offered the testimony of Mitchell County Sheriff's Deputies Jeff Huftalin and Greg Beaver, and Iowa State Trooper Charles McNally, Jr. Gocha offered the testimony of Aaron Hermen and Hillary Hermen, and he testified on his own behalf. The court admitted into evidence the following exhibits: **Gov't Ex. 1**, report of Mike

Niemeyer, Assistant Chief of the Osage, Iowa, Police Department; **Gov't Ex. 2**, Iowa Incident Report; **Gov't Ex. 3**, handwritten statement of Niky L. Lewis; **Gov't Ex. 4**, report of Deputy Greg Beaver; **Gov't Ex. 5**, application for search warrant for a residence on 360th Street in Osage, Iowa (the "New Haven property"); **Gov't Ex. 6**, report of forensic search of computers by the Iowa State University laboratory; **Gov't Ex. 7**, application for search warrant for computer-related items; **Gov't Ex. 8**, report of Deputy Jeff Huftalin; **Gov't Ex. 9**, report of Iowa State Trooper Greg Salier; **Gov't Ex. 10**, aerial photograph of the New Haven property; **Gov't Ex. 11**, photographs of items seized; and **Gov't Ex. 12**, permission to search form signed by Niky L. Lewis.

The Government submitted a supplemental resistance to the motion on June 27, 2007. (Doc. No. 30.[1]) Gocha filed a supplemental memorandum in support of his motion to suppress on June 28, 2007. (Doc. No. 31.)

The court finds the motion is fully submitted and ready for decision.

### *FACTUAL BACKGROUND*

The following facts are not disputed by the parties. In October 2006, Gocha and Niky Lewis lived together on the New Haven property, located on the edge of New Haven, a small town in Mitchell County, Iowa. They were not married, but had lived together on the New Haven property for about five years with their son, Braxtin. Lewis worked as the "Jail Captain" for the Mitchell County Jail, and Gocha did some work in a shop building located on the New Haven property. The New Haven property included a house, the shop building, and some other buildings.

On the morning of October 21, 2006, Aaron Hermen and his sister, Hillary Herman, arrived at the New Haven property to see Gocha. At about 10:30 a.m., Lewis drove up to

---

[1] The Government filed a supplemental resistance on June 26, 2007 (Doc. No. 29), but revised the supplemental resistance the next day (Doc. No. 30).

2

the shop on the New Haven property with her younger sister and Braxtin.  Lewis began knocking on the door to the shop, which was locked.  When Gocha heard Lewis at the door, he had Hillary Herman hide in the attic.  Aaron Hermen then opened the door and let Lewis in.  Lewis had never seen Aaron before.  She asked him where Gocha was, and he told her Gocha was sleeping in the back.  Lewis went to the back of the shop and found Gocha.  Lewis and Gocha then had a heated argument.  During the argument, Lewis accused Gocha of being a drug addict.  Eventually, Lewis told Aaron Hermen to leave the property.  Aaron left the shop building and sat on a blue car parked in the driveway.  When Lewis again told Aaron to leave, he stated he was waiting for someone.

At some point during the argument between Lewis and Gocha, there was some unwanted physical contact.  Lewis locked herself in her car with her sister and Braxtin, and called 911.  While listening to a police scanner in the shop, Gocha heard that the police were on their way to the property.  He called 911 to tell the police there was no reason for them to come, but when his efforts were unsuccessful, he told Aaron to remain in the shop building and he went outside.[2]

Deputy Huftalin arrived at the scene first, at around noon, and met Gocha in the driveway.  Huftalin was aware that in November 2005, Gocha had been in a traffic accident in Wisconsin, and that a firearm and drugs were found in Gocha's vehicle.  Also, earlier in October 2006, officers had received a report from a confidential source suggesting Gocha was in the methamphetamine business.  Huftalin knew Gocha had a gun permit and there were firearms on the property.

Gocha admitted to Huftalin that he had had an argument with Lewis, but he denied striking her, stating instead that she had struck him.  Huftalin asked if anyone else was on the property, and Gocha told him Aaron Hermen was in the shop.  Huftalin then advised

---

[2]The evidence does not reveal whether Aaron Hermen had re-entered the shop building by this point, or whether Gocha told Aaron to return to shop building and wait inside.

3

Gocha that he was getting nervous about the situation, and he was going to place Gocha in handcuffs for officer safety. Huftalin did not have his handcuffs with him, but Gocha was cooperative while Huftalin located his handcuffs, put them on Gocha, and placed Gocha in his squad car.

Huftalin then spoke with Lewis, who confirmed that she and Gocha had been in an argument, but she stated Gocha had pushed her first and she had struck him in response. She told Huftalin that she believed there were drugs and other people on the property. Huftalin went to the shop, opened the unlocked door, and found Aaron Hermen in the shop. Huftalin asked if anyone else was in the shop, and Hermen responded, "No."

Deputy Beaver and another officer arrived at the scene. Beaver was briefed by Huftalin, and then spoke with Lewis. Lewis acknowledged that she had had an argument with Gocha, and stated she had accused him of being a drug user. She told Beaver that Gocha had pushed her, and she had responded by hitting him. She said that when she told Gocha she was going to call 911, he threatened to kill her if she made the call.

Lewis told Beaver she believed there were other people on the property in addition to Aaron Herman, and she wanted them out. She then provided the officers with verbal consent to search the property. Beaver then spoke with Aaron Hermen, who stated he was on the property to do some work for Gocha. He denied that he was there to use drugs. Hermen was told to leave the property, and he did so.

A short time later, Trooper McNally and another officer arrived, and Huftalin told them the area had not been cleared and asked them to do so. Beaver then had a short discussion with Gocha, placed him under arrest for domestic assault, and moved him to his patrol car. Beaver told Huftalin to go to the station and start working on a search warrant application, and then Beaver transported Gocha to the Mitchell County Jail.

McNally and the other officer then began a sweep of the property. At about 12:50 p.m., McNally found Hillary Hermen hiding in the attic of the shop building. Near

4

where she was found, McNally observed in plain view a small gray tub containing glass pipes, white powder residue, baggies, a scale, currency, and other items that were consistent with methamphetamine distribution.

At about 1:00 p.m., Beaver returned to the property and took a statement from Lewis. She stated that about a month previously, she had found what she believed to be a cap from a drug vile in her bed, but when she confronted Gocha about it, he denied that it was a drug cap. In the early spring of 2006, she found a bag of cut-up pills and what she thought were methamphetamine pipes in a desk drawer in the shop. She threw these items away. After the November 2005 traffic accident, Gocha contacted her from a hospital in Wisconsin, and asked her to have someone go to the shop and remove "his shit" because he thought the police might be coming. Lewis concluded that Gocha was referring to guns and drugs.

Beaver then obtained a search warrant from a state court judge to search the property. In the search warrant papers presented to the judge, Huftalin erroneously included a boilerplate "Attachment A" containing information relating to the distribution of marijuana. The search warrant was served at about 8:45 p.m. that day. At about the time the search warrant was being served, Beaver obtained Lewis's signature on a written permission-to-search form designating the property as the area to be searched.

Among the items seized during the search were certain computers and related hardware and software. Officers later obtained a second search warrant to search these items, and later still obtained a third search warrant to further search other computer-related equipment and documents.

## DISCUSSION

### A. *Request for Franks Hearing*

Gocha argues Beaver deliberately or recklessly included certain false or erroneous information in the warrant affidavit, and if this information had been left out of the affidavit, probable cause would have been lacking. He asks for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Under *Franks*, the court is required to hold a hearing "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]" 438 U.S. at 155-56, 98 S. Ct. at 2676. Further,

> [i]n the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 156, 98 S. Ct. at 2676. The same principles are true for material that is omitted from (rather than included in) a warrant affidavit. *United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004).

Under *Franks*, before a defendant is entitled to a hearing, he must make a *substantial* preliminary showing that either relevant information was omitted from the affidavit, or false information was included in the affidavit, either intentionally or with reckless disregard for the truth. The substantiality requirement is not easily met. *See United States v. Hiveley*, 61 F.3d 1358, 1360 (8th Cir. 1995); *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987). When no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a *Franks* hearing is not required. *United States v. Williams*, 477 F.3d 554, 557-

6

58 (8th Cir. 2007) (citing *Franks*); *U.S. v. Moore*, 129 F.3d 989, 992 (8th Cir. 1997). "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *Moore*, 129 F.3d at 992 (citing *Franks*, 438 U.S. at 171); *see Ketzeback*, *supra*;³ *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986). The defendant also must show "that the allegedly false statement was necessary to a finding of probable cause or that the alleged omission would have made it impossible to find probable cause." *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998).

In the present case, Gocha argues Beaver wrongfully included the attachment concerning marijuana with the search warrant application, and he is entitled to a probable cause hearing under *Franks* to review whether there was sufficient probable cause to support the issuance of the warrant in the absence of the attachment.

On this record, Gocha has not made the requisite showing to warrant a *Franks* hearing. It is obvious the marijuana attachment was simply ignored by everyone who looked at the search warrant application, and had no bearing on the finding of probable cause by the state court judge. Further, there is no evidence that Beaver deliberately or recklessly included the boilerplate marijuana attachment with his search warrant application.

If anything, this mixup is an indictment of the over-reliance by law enforcement on form attachments and on "cutting and pasting" in the preparation of search warrant

---

³In *Ketzeback*, the court held:
> A facially valid warrant affidavit is constitutionally infirm if the defendant establishes the affidavit included deliberate or reckless falsehoods that, when redacted, render the affidavit's factual allegations insufficient to support a finding of probable cause. *Franks v. Delaware,* 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Omissions likewise can vitiate a warrant if the defendant proves "first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.'" *United States v. Allen,* 297 F.3d 790, 795 (8th Cir. 2002).

*Ketzeback*, 358F.3d 987, 990 (8th Cir. 2004).

applications. This is understandable in light of the time pressures inherent in obtaining search warrants, where often a large number of law enforcement officials are waiting, sometimes late into the night, for the issuance of a warrant so they can begin their work. Incidents like this one would not occur, however, if more care were taken in the preparation, review, and issuance of warrant papers.

Although there certainly was negligence in the preparation of the search warrant application, the court cannot find on this record that the error was deliberate or reckless. *Franks* does not apply to negligent misrepresentations. *See United States v. Schmitz*, 181 F.3d 981, 986 (8th Cir. 1999).[4] Even though this case was, from the beginning, about methamphetamine and guns, and never about marijuana, it is obvious that no one, including the state court judge and the Assistant County Attorney who reviewed the search warrant application, noticed the mistake.

Beaver testified the marijuana attachment's inclusion in his application for a search warrant was an honest mistake. The court credits this testimony. Gocha is not entitled to a *Franks* hearing.

### B. Pre-Warrant Search of the Property

Gocha argues the officers violated his rights under the Fourth Amendment to the United States Constitution when they conducted a pre-warrant "protective sweep" of the property. (Doc. No. 22-1, p. 2.) The Government responds by arguing that a complete search of the property was justified based on the verbal and written consents given to the

---

[4] "[I]n the context of a *Franks v. Delaware* inquiry, we have declined to adopt a definition of 'reckless disregard' that incorporates the 'subjective' versus 'objective' terminology and have instead explained that the test for determining whether an affiant's statements were made with reckless disregard for the truth is not simply whether the affiant acknowledged that what he [or she] reported was true, but whether, viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported." *United States v. Schmitz*, 181 F.3d 981, 986-87 (8th Cir. 1999).

officers by Lewis, the co-owner of the property. The Government also argues the officers were entitled to conduct a protective search of the property based on considerations of officer safety and the community care-taking function of the police. To address the Government's first argument, that Lewis's verbal and written consents to search justified a complete search of the property, the court first must resolve several factual disputes.

Gocha testified that while he was seated in Beaver's patrol car immediately before he was transported to the Mitchell County Jail, he specifically told Beaver, "I don't want anybody in my shop," or "I don't want anyone going in my shop." Beaver denies Gocha made such a statement. The court finds Gocha did not make any statement to the officers advising them he did not want them to search his property. Gocha's testimony that he made such a statement to the officers is not credible. Furthermore, there is no reference to any such statement in any of the police reports or in any of Gocha's filings in this case prior to the suppression hearing.

Aaron Hermen and Hillary Hermen both testified that during the sweep of the shop, the officers did not look just for people hiding in the shop, but looked through drawers, papers, and other items. The officers testified that during the protective sweep, they searched only for people, and did not conduct any further search. The court finds the testimony of Aaron Hermen and Hillary Hermen is not credible, and the officers did not conduct a search of the shop during the course of the sweep of the property beyond searching for people hiding in the shop.

There is conflicting evidence in the record concerning whether Lewis had common authority with Gocha over the shop building. The following statement is contained in the affidavit of Deputy Beaver attached to the search warrant application: "Niky [Lewis] stated to this deputy that she is not allowed to go into the shop west of her home. She does not have a key to the shop." The court finds Lewis gave her statement to Beaver *after* officers had begun their sweep of the property, and after officers had found Hillary Hermen and the

9

tub of methamphetamine-related items in the attic. Lewis also gave a handwritten statement to Beaver in which she stated the following:

> I asked him to look at himself. I said why are you such a fucken tweeker [drug user] & why are you doing this to your family. Les [Gocha] said what do you want. Did you want something. I said I have the right to know what is going on here. He told me nothing. I tryed [sic] to look inside of where he was sleeping. He blocked my doing so & said nothing. Les told me to just leave. I told him not til I know what was going on. Les told me that he was just a looser [sic] & I needed to move on. I told him again that I wanted to know what was in the area where he was sleeping. He would not let me in. Les said just fucking leave. *I told him that I had every right to be here as this was my house to[o]*.

Gov't. Ex. 3 (emphasis added). This statement also was written *after* the officers had begun their sweep of the property. Thus, the court finds Lewis's *written* consent to search did not justify a complete search of the property. The court next will examine whether Lewis's *verbal* consent to search justified a complete search of the property.

The Government has the burden of establishing an exception to the Fourth Amendment's warrant requirement by a preponderance of the evidence. *See United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000); *United States v. Jaras*, 86 F.3d 383, 389 (5th Cir. 1996).

> It is well established that warrantless searches violate the Fourth Amendment unless they fall within a specific exception to the warrant requirement, *United States v. Karo,* 468 U.S. 705, 717, 104 S. Ct. 3296, 3304, 82 L. Ed. 2d 530 (1984), and that consent is "one of the specifically established exceptions to the requirements of both a warrant and probable cause." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d 854 (1973). . . .

*Jaras*, 86 F.3d at 388.

The analysis begins with the "obvious" standard recognized by the Supreme Court in *United States v. Karo*, 468 U.S. 705, 715, 104 S. Ct. 3296, 3303, 82 L. Ed. 2d 530 (1984):

> At the risk of belaboring the obvious, private residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable. Our cases have not deviated from this basic Fourth Amendment principle. Searches and seizures inside a home without a warrant are presumptively unreasonable absent exigent circumstances. *Welsh v. Wisconsin*, 466 U.S. 740, 748-749, 104 S. Ct. 2091, 2097, 80 L. Ed. 2d 732 (1984); *Steagald v. United States*, 451 U.S. 204, 211-212, 101 S. Ct. 1642, 1647-1648, 68 L. Ed. 2d 38 (1981); *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380, 63 L. Ed. 2d 639 (1980).

A significant difference exists, however, between a warrantless search, even one based on probable cause, and a search conducted with the consent of one who has "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 998, 993, 39 L. Ed. 2d 242 (1974). "'[W]here two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either.'" *Id.*, 415 U.S. at 169 n.4, 94 S. Ct. at 992 n.4.

> The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained. *Illinois v. Rodriguez*, 497 U.S. 177, 110 S. Ct. 2793, 111 L. Ed. 2d 148

11

(1990); *United States v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974).

*Georgia v. Randolph*, 547 U.S. 103, ___, 126 S. Ct. 1515, 1518, 164 L. Ed. 2d 208 (2006). "[T]he exception for consent extends even to entries and searches with the permission of a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant[.]" *Randolph*, 126 S. Ct. at 1520 (citing *Rodriguez*, 497 U.S. at 186, 110 S. Ct. at 2793); *see United States v. Hilliard*, ___ F.3d ____, 2007 WL 1713315 (8th Cir. June 15, 2007) (citing *Rodriguez*).

For Lewis's consent to search the shop building to be valid, the Government must demonstrate that Lewis shared, or reasonably was believed to share, authority over the areas searched. If the Government fails to sustain this burden, the evidence must be suppressed. *Basinski*, 226 F.3d at 834. To establish actual authority, the Government must show the following:

> A finding of actual authority requires proof that the consenting party and the party challenging the search "mutually used the property searched and had joint access to and control of it for most purposes, so that it is reasonable to recognize that either user had the right to permit inspection of the property and that the complaining co-user had assumed the risk that the consenting co-user might permit the search." *United States v. Rizk,* 842 F.2d 111, 112-13 (5th Cir.) (*per curiam*), *cert. denied,* 488 U.S. 832, 109 S. Ct. 90, 102 L. Ed. 2d 66 (1988).

*Jaras*, 86 F. 3d at 389; *see United States v. Fultz*, 146 F.3d 1102, 1105 (9th Cir. 1998) (citation omitted). "It is well established that an adult co-occupant of a residence may consent to a search[.]" *United States v. Jones*, 193 F.3d 948, 950 (8th Cir. 1999) (citing *United States v. Reeves*, 730 F.2d 1189, 1193-94 (8th Cir. 1984)).

To establish apparent authority, the Government must show "a reasonable person, with the same knowledge of the situation as that possessed by the government agent to whom consent was given, would reasonably believe that the third party had authority over

12

the area to be searched." *Basinski*, 226 F.3d at 834 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990); *United States v. Chaidez*, 919 F.2d 1193, 1201 (7th Cir. 1990)); *see also Welsh v. Wisconsin*, 466 U.S. 740, 748-49, 104 S. Ct. 2091, 2097, 80 L. Ed. 2d 732 (1984).

The question here is whether Lewis either had actual authority, or the officers reasonably could have believed she had common authority, to consent to a search of the shop building.[5] *See Matlock*, 415 U.S. at 170, 94 S. Ct. at 992. To uphold Lewis's consent to search the shop building, the court need only find that "'the facts available . . . justified a reasonable officer in the belief that the consenting party [Lewis] had authority over the premises,'" and could consent to a search of the entire premises by authorities. *United States v. Oates*, 173 F.3d 651, 657 (8th Cir. 1999) (quoting *United States v. Czeck*, 105 F.3d 1235, 1239 (8th Cir. 1997)).

The court finds the facts available to the officers when they conducted their sweep of the property justified a belief that Lewis had authority over the entire premises, including the shop building, and that she had consented to a search of the entire premises. The officers knew Lewis lived on the property. When the officers arrived, she was on the property, locked in her vehicle. After speaking with Lewis and Gocha, the officers knew that a short time before they arrived, Lewis and Gocha had had a confrontation on the property. Lewis told the officers she believed there was someone else on the premises in addition to Aaron Hermen, and she wanted them removed. The officers had ample reason to believe Lewis had control over the premises and the authority to consent to a search of the premises. Notably, at the time of the sweep, the officers did not know Gocha had locked the shop building, or that Lewis might have some doubt about her authority to enter

---

[5]There is no question that Lewis had actual authority to consent to the search of the remainder of the property.

13

the shop building without Gocha's permission -- that information came to the officers' attention later.

The Government argues alternatively that the officers were authorized to conduct a protective sweep of the property even if no valid consent to search was given. The United States Supreme Court explained in *Maryland v. Buie*, 494 U.S. 325, 327-28, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990):

> A "protective sweep" is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding. . . . We conclude that the Fourth Amendment would permit the protective sweep undertaken here if the searching officer "possesse[d] a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed]' the officer in believing," *Michigan v. Long*, 463 U.S. 1032, 1049-1050, 103 S. Ct. 3469, 3480-3481, 77 L. Ed. 2d 1201 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968)), that the area swept harbored an individual posing a danger to the officer or others.

*Id.*, 494 U.S. at 327-28, 110 S. Ct. at 1094-95. Such a protective sweep "is nevertheless not a full search of the premises, but . . . lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.*, 494 U.S. at 335, 110 S. Ct. at 1099.

There is some question here as to whether a protective sweep was appropriate in these circumstances. This is not a drug case, for example, where the fact that other persons might be present on a premises creates a potentially dangerous situation for the investigating officers, but courts have upheld protective sweeps in other situations, as well. *See, e.g.*, *United States v. Davis*, 471 F.3d 938, 944 (8th Cir. 2006) (upholding protective sweep in drug case); *United States v. Hawkins*, 59 F.3d 723, 727-28 (8th Cir. 1996) (upholding protective sweep in domestic situation). Also, here, the suspected aggressor was in custody

14

in a patrol car, and the situation appeared to be entirely stable. *Compare United States v Waldner*, 425 F.3d 514, 517 (8th Cir. 2005) (protective sweep exceeded Fourth Amendment where there was no evidence officers had any articulable facts that an unknown individual might be in the house, ready to launch an attack) *with United States v. Jansen*, 470 F.3d 762, 765 (8th Cir. 2006) (officer was reasonable in concluding he needed to secure a trailer before leaving to get a search warrant).

However, the court does not need to address the "protective sweep" issue because of the finding, above, that the officers had a valid consent to search the property when they conducted their sweep of the property.

### *C. The Search Warrants*

Finally, Gocha argues all three of the search warrants were tainted by the prior illegality of the earlier warrantless searches of his residence and the shop. (Doc. No. 22-1, p. 2.) Because the court has found the initial consent search was lawful, there is no taint attached to any of the search warrants.

### *CONCLUSION*

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED** that Gocha's motion to suppress be **denied**.

Any party who objects to this report and recommendation must serve and file specific, written objections by **July 16, 2007**. Any response to the objections must be served and filed by **July 23, 2007**.

**IMPORTANT NOTE:** Any party planning to lodge any objection to this report and recommendation must order a transcript of the hearing promptly, but not later than **July 6, 2007**, <u>regardless of whether the party believes a transcript is necessary to argue the objection</u>. If an attorney files an objection to this report and recommendation without

15

having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

In addition, to allow sufficient time for the parties to review this report and recommendation, to file such objections as they deem advisable, and for the district court to issue a final opinion on Gocha's motion, the trial of this case, currently scheduled for August 6, 2007, is **continued** to **September 4, 2007**. The time from the date of Gocha's motion (June 1, 2007), to the date of trial is excluded for purposes of speedy trial calculations. 18 U.S.C. § 3161(h)(1)(F) & (J).

**IT IS SO ORDERED.**

**DATED** this 3rd day of July, 2007.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT