**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>LESLIE GOCHA,<br><br>        Defendant. | No. CR07-2006-MWB<br><br>**ORDER CONCERNING MAGISTRATE'S REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *A. Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *B. Objections To Findings Of Fact* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
       *1.    Lewis's seeing Aaron Hermen* . . . . . . . . . . . . . . . . . . . . . 8
       *2.    Aaron's statement about waiting for someone* . . . . . . . . . . 9
       *3.    Defendant Gocha's statement to 911 operator* . . . . . . . . . . 9
       *4.    Deputy Huftalin's knowledge of report* . . . . . . . . . . . . . 10
       *5.    Deputy Huftalin's handcuffing defendant Gocha* . . . . . . . . 10
       *6.    Implication that there were drugs in the shop* . . . . . . . . . 11
       *7.    Defendant Gocha's threat to kill Lewis* . . . . . . . . . . . . . . 12
       *8.    Drug paraphernalia in plain view* . . . . . . . . . . . . . . . . . . 12
       *9.    Removal of contraband from shop* . . . . . . . . . . . . . . . . . 13
       *10.   Lewis as co-owner of the property* . . . . . . . . . . . . . . . . . 13
       *11.   Whether Gocha forbid the search of the shop* . . . . . . . . 14
       *12.   The credibility of the Hermens* . . . . . . . . . . . . . . . . . . . 14
       *13.   Lewis's statement regarding her access to the shop* . . . . . . . 15

   *C. Objections To Legal Conclusions* .......................... 15
      1.  **Officers' belief that Lewis had apparent authority** ........ 15
      2.  **Gocha's arguments regarding search warrants** .......... 19

**III. CONCLUSION** .............................................. 19

## I. INTRODUCTION AND BACKGROUND

### *A. Procedural Background*

On April 19, 2007, a superseding indictment was returned against defendant Leslie Gocha charging him with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846; being an unlawful user of controlled substances in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3); and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). On June 1, 2007, defendant Gocha filed a motion to suppress and application for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In his motion, defendant Gocha seeks to suppress evidence found during searches of his residence and shop as well as searches of computers and electronic equipment. Defendant Gocha argues that a law enforcement officer deliberately or recklessly included certain false or erroneous information in the warrant affidavit, and if this information had been left out of the affidavit, probable cause would have been lacking. He asks for a hearing pursuant to

2

*Franks v. Delaware*, 438 U.S. 154 (1978). Defendant Gocha further contends that law enforcement officers violated his rights under the Fourth Amendment to the United States Constitution when they conducted a pre-warrant "protective sweep" of his residence and shop. In addition, defendant Gocha challenges the legality of all subsequently obtained search warrants, arguing that the search warrants were tainted by the prior illegality of prior warrantless searches of his residence and the shop.

Defendant Gocha's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). Judge Zoss conducted an evidentiary hearing and then filed a Report and Recommendation in which he recommends that defendant Gocha's motion to suppress be denied. Judge Zoss concluded that defendant Gocha had not made the requisite showing to warrant a *Franks* hearing. Judge Zoss further concluded that there was no evidence to suggest that the law enforcement officer seeking the search warrant for defendant Gocha's shop and residence deliberately or recklessly failed to include in his affidavit information that would have detracted from probable cause. Judge Zoss also concluded that law enforcement officers did not violate defendant Gocha's rights under the Fourth Amendment to the United States Constitution when they conducted a pre-warrant "protective sweep" of his residence and shop. Finally, Judge Zoss concluded that because the initial consent search was lawful, there is no taint attached to any of the search warrants. Therefore, Judge Zoss recommended that defendant Gocha's motion to suppress be denied. Defendant Gocha has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Gocha's motion to suppress.

## B. *Factual Background*

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> In October 2006, Gocha and Niky Lewis lived together on the New Haven property, located on the edge of New Haven, a small town in Mitchell County, Iowa. They were not married, but had lived together on the New Haven property for about five years with their son, Braxtin. Lewis worked as the "Jail Captain" for the Mitchell County Jail, and Gocha did some work in a shop building located on the New Haven property. The New Haven property included a house, the shop building, and some other buildings.
>
> On the morning of October 21, 2006, Aaron Hermen and his sister, Hillary Herman, arrived at the New Haven property to see Gocha. At about 10:30 a.m., Lewis drove up to the shop on the New Haven property with her younger sister and Braxtin. Lewis began knocking on the door to the shop, which was locked. When Gocha heard Lewis at the door, he had Hillary Herman hide in the attic. Aaron Hermen then opened the door and let Lewis in. Lewis had never seen Aaron before. She asked him where Gocha was, and he told her Gocha was sleeping in the back. Lewis went to the back of the shop and found Gocha. Lewis and Gocha then had a heated argument. During the argument, Lewis accused Gocha of being a drug addict. Eventually, Lewis told Aaron Hermen to leave the property. Aaron left the shop building and sat on a blue car parked in the driveway. When Lewis again told Aaron to leave, he stated he was waiting for someone.
>
> At some point during the argument between Lewis and Gocha, there was some unwanted physical contact. Lewis locked herself in her car with her sister and Braxtin, and called 911. While listening to a police scanner in the shop, Gocha heard that the police were on their way to the property. He called 911 to tell the police there was no reason for them to

4

come, but when his efforts were unsuccessful, he told Aaron to remain in the shop building and he went outside.

Deputy Huftalin arrived at the scene first, at around noon, and met Gocha in the driveway. Huftalin was aware that in November 2005, Gocha had been in a traffic accident in Wisconsin, and that a firearm and drugs were found in Gocha's vehicle. Also, earlier in October 2006, officers had received a report from a confidential source suggesting Gocha was in the methamphetamine business. Huftalin knew Gocha had a gun permit and there were firearms on the property.

Gocha admitted to Huftalin that he had had an argument with Lewis, but he denied striking her, stating instead that she had struck him. Huftalin asked if anyone else was on the property, and Gocha told him Aaron Hermen was in the shop. Huftalin then advised Gocha that he was getting nervous about the situation, and he was going to place Gocha in handcuffs for officer safety. Huftalin did not have his handcuffs with him, but Gocha was cooperative while Huftalin located his handcuffs, put them on Gocha, and placed Gocha in his squad car.

Huftalin then spoke with Lewis, who confirmed that she and Gocha had been in an argument, but she stated Gocha had pushed her first and she had struck him in response. She told Huftalin that she believed there were drugs and other people on the property. Huftalin went to the shop, opened the unlocked door, and found Aaron Hermen in the shop. Huftalin asked if anyone else was in the shop, and Hermen responded, "No."

Deputy Beaver and another officer arrived at the scene. Beaver was briefed by Huftalin, and then spoke with Lewis. Lewis acknowledged that she had had an argument with Gocha, and stated she had accused him of being a drug user. She told Beaver that Gocha had pushed her, and she had

5

responded by hitting him. She said that when she told Gocha she was going to call 911, he threatened to kill her if she made the call.

Lewis told Beaver she believed there were other people on the property in addition to Aaron Herman, and she wanted them out. She then provided the officers with verbal consent to search the property. Beaver then spoke with Aaron Hermen, who stated he was on the property to do some work for Gocha. He denied that he was there to use drugs. Hermen was told to leave the property, and he did so.

A short time later, Trooper McNally and another officer arrived, and Huftalin told them the area had not been cleared and asked them to do so. Beaver then had a short discussion with Gocha, placed him under arrest for domestic assault, and moved him to his patrol car. Beaver told Huftalin to go to the station and start working on a search warrant application, and then Beaver transported Gocha to the Mitchell County Jail.

McNally and the other officer then began a sweep of the property. At about 12:50 p.m., McNally found Hillary Hermen hiding in the attic of the shop building. Near where she was found, McNally observed in plain view a small gray tub containing glass pipes, white powder residue, baggies, a scale, currency, and other items that were consistent with methamphetamine distribution.

At about 1:00 p.m., Beaver returned to the property and took a statement from Lewis. She stated that about a month previously, she had found what she believed to be a cap from a drug vile in her bed, but when she confronted Gocha about it, he denied that it was a drug cap. In the early spring of 2006, she found a bag of cut-up pills and what she thought were methamphetamine pipes in a desk drawer in the shop. She threw these items away. After the November 2005 traffic accident, Gocha contacted her from a hospital in Wisconsin,

6

and asked her to have someone go to the shop and remove "his shit" because he thought the police might be coming. Lewis concluded that Gocha was referring to guns and drugs.

Beaver then obtained a search warrant from a state court judge to search the property. In the search warrant papers presented to the judge, Huftalin erroneously included a boilerplate "Attachment A" containing information relating to the distribution of marijuana. The search warrant was served at about 8:45 p.m. that day. At about the time the search warrant was being served, Beaver obtained Lewis's signature on a written permission-to-search form designating the property as the area to be searched.

Among the items seized during the search were certain computers and related hardware and software. Officers later obtained a second search warrant to search these items, and later still obtained a third search warrant to further search other computer-related equipment and documents.

Report and Recommendation at pp. 2-5 (footnote omitted). Upon review of the record, the court adopts all of Judge Zoss's factual findings that have not been objected to by defendant Gocha.

## II. *LEGAL ANALYSIS*

### A. *Standard Of Review*

Pursuant to statute, this court's standard of review for a magistrate judge's report and recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

7

28 U.S.C. § 636(b)(1). Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's report and recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*). As noted above, defendant Gocha has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Gocha's motion to suppress.

### *B. Objections To Findings Of Fact*

#### *1. Lewis's seeing Aaron Hermen*

Defendant Gocha initially objects to Judge Zoss's finding that Nicky Lewis had never seen Aaron Hermen prior to October 21, 2006. Defendant Gocha correctly points

out that in her written statement, Nickly Lewis indicates that she had seen Aaron Hermen before but did not know him. Gov't Ex. 3 at 1. Therefore, this objection is sustained.

### 2. *Aaron's statement about waiting for someone*

Defendant Gocha also objects to Judge Zoss's finding that when Nicky Lewis told Aaron Hermen to leave, Hermen stated that "he was waiting for someone." Report and Recommendation at 3. Niky Lewis states in her written statement that when she told Aaron Hermen to leave the property he stated that "he was waiting for the others in the car." Gov't Ex. 3 at 3. Given that the car was his sister's, such a statement by Aaron Hermen is eminently reasonable and logical. Accordingly, this objection is overruled.

### 3. *Defendant Gocha's statement to 911 operator*

Defendant Gocha next objects to Judge Zoss's finding that when defendant Gocha called 911 he told the dispatcher that "there was no reason for them to come." Report and Recommendation at 3. Defendant Gocha asserts that he told the 911 dispatcher that they did not have to "send cars flying that fast" and that "you guys can slow down." Report and Recommendation at 97.[1] Defendant Gocha, however, did not testify as such at the suppression hearing. Rather, defendant Gocha relies upon the hearsay testimony of Aaron Herman, a drug user and convicted felon, recalling what defendant Gocha told the 911 dispatcher. The best evidence of what defendant Gocha told the 911 dispatcher on October 21, 2006, would be a clear recording of that call. However, a recording of defendant Gocha's 911 call was not introduced at the suppression hearing. Moreover, the court notes that its review of the record has failed to disclose the source of Judge Zoss's finding. However, it is clear from the totality of the evidence produced at the hearing that

---

[1]Defendant Gocha incorrectly identifies in his objections to the Report and Recommendation that these quotations can be found at page 78.

9

defendant Gocha did make a 911 call on October 21, 2006. Precisely what defendant Gocha told the 911 dispatcher on that date cannot be discerned from this record. Because the court cannot discern from credible evidence in the record what defendant Gocha told the 911 dispatcher, defendant Gocha's objection is granted in so far as he objects to Judge Zoss's specific factual finding but denied in all other respects.

### 4. *Deputy Huftalin's knowledge of report*

Defendant Gocha further objects to what he believes is an implication in the Report and Recommendation that Deputy Huftalin was aware on October 21, 2006, that earlier that month officers had received a report from a confidential source suggesting Gocha was involved in the methamphetamine business. The line in question in Judge Zoss's Report and Recommendation reads as follows: "Also, earlier in October 2006, officers had received a report from a confidential source suggesting Gocha was in the methamphetamine business. " Report and Recommendation at 3. In this sentence Judge Zoss did not make any specific finding that Deputy Huftalin was aware of the report from a confidential source suggesting Gocha was involved in the methamphetamine business. Whether an implication exists in this sentence is reminiscent of Justice Potter's famous definition of obscenity in *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964), ". . . I know it when I see it . . . .". One might read an implication in this sentence because the sentence is ambiguous with respect to Deputy Huftalin's knowledge. Nonetheless, whether an implication exists here is irrelevant to the court's determination of the motion at hand. Therefore, this objection is overruled.

### 5. *Deputy Huftalin's handcuffing defendant Gocha*

Defendant Gocha next objects to the suggestion that Deputy Huftalin handcuffed defendant Gocha "for officer safety." Report and Recommendation at 4. Defendant Gocha asserts that while Deputy Huftalin decided to handcuff defendant Gocha "until I had

10

additional help", Tr. at 14, he did not feel that he was in danger. Defendant Gocha's characterization of Deputy Huftalin's testimony is oversimplified. While Deputy Huftalin did not feel that defendant Gocha was acting in an overtly dangerous manner toward him at the time he decided to handcuff defendant Gocha, it is clear that Deputy Huftalin did so for his own safety. Deputy Huftalin's testimony was that he advised defendant Gocha that he "was going to place him in handcuffs until I had some additional help." Tr. at 14. This was obviously in reaction to the circumstances Deputy Huftalin found himself in on the day in question where he was the sole law enforcement officer at the scene of a reported domestic disturbance in which one of the parties involved was known to possess firearms. Thus, the court concludes that while defendant Gocha made no overt overtures of hostility toward Deputy Huftalin, Deputy Huftalin's decision to handcuff defendant Gocha ,"until [he] had additional help", was to ensure his safety at the scene until other law enforcement officers arrived to provide assistance. Accordingly, this objection is overruled.

### 6.    *Implication that there were drugs in the shop*

Defendant Gocha further objects to what he believes is an implication in the Report and Recommendation that when Niky Lewis told Deputy Huftalin that she believed that there were "drugs and other people on the property," Report and Recommendation at 4, that Judge Zoss concluded that Lewis was implying that there were drugs in the shop although she did not explicitly state where the drugs were located. The record is clear that Lewis did not tell Deputy Huftalin where she believed any drugs on the property were located. Equally clear, however, is the fact that when Lewis arrived at the shop she found Aaron Hermen in it. Moreover, it is clear that she relayed this fact to Deputy Huftalin. Thus, the shop was one possible location on the premises where drugs might have been hidden. However, from the court's review of the record and Judge Zoss's Report and

11

Recommendation, the court does not find that Judge Zoss concluded that Lewis was implying that there were drugs in the shop. Therefore, this objection is overruled.

### 7. *Defendant Gocha's threat to kill Lewis*

Defendant Gocha next objects to Judge Zoss's finding that defendant Gocha threatened to kill Lewis if she called 911. Judge Zoss did not so find, but did find that Lewis had told Deputy Beaver that Lewis had told him, when he arrived on the scene, that Gocha had threatened to kill her if she called 911. This factual finding is fully supported by the testimony of Deputy Beaver. *See* Tr. at 35, 36. Therefore, this objection is also overruled.[2]

### 8. *Drug paraphernalia in plain view*

Defendant Gocha also objects to Judge Zoss's finding that Trooper McNally observed a gray tub containing drug paraphernalia, white powder residue, a scale, currency and other items in "plain view." Report and Recommendation at 5. Defendant Gocha argues that Trooper McNally's testimony on this point is expressly contradicted by the testimony of Hillary Hermen. Although Hillary Hermen did testify at the suppression hearing that she did not see a gray tub with drug paraphernalia, Tr. at 127, Trooper NcNally testified that, after he found Hillary Hermen hiding in the attic of the shop, he came across the tub in the attic in plain view. Tr. at 78. The fact that Hillary Hermen did not see the tub in the shop's attic is not altogether surprising since she was hiding in a darkened room. Trooper McNally, on the other hand, was actively examining the room,

---

[2] Because it is unnecessary for the purposes of defendant Gocha's motion to suppress, the court makes no finding as to whether or not defendant Gocha did, in fact, threaten Niky Lewis. The court notes that Lewis did not testify at the hearing. Hillary Herman testified at the suppression hearing that no such threat was made by defendant Gocha. Tr. at 126.

12

using a flashlight, for other potential individuals hidden there.  Therefore, Judge Zoss's finding is fully supported by the record, and this objection is also overruled.

### 9. *Removal of contraband from shop*

Defendant Gocha also objects to Judge Zoss's suggestion that in November 2005, following a traffic accident, defendant Gocha contacted Lewis "from a hospital in Wisconsin," requesting that she have someone remove contraband from his shop. Report and Recommendation at 5. Defendant Gocha argues that Lewis was at the hospital. The record is clear that after a motor vehicle accident in November 2005, Lewis drove to the hospital where defendant Gocha was recooperating and at that time Gocha requested that Lewis make arrangements with someone "[t]o get the shit out of the shop." Tr. at 61. To the extent that the Report and Recommendation could be read as suggesting that Lewis was someplace other than the hospital in Wisconsin when she received Gocha's instructions, defendant Gocha's objection is sustained.

### 10. *Lewis as co-owner of the property*

Defendant Gocha further objects to Judge Zoss's finding that Lewis was co-owner of the property. Report and Recommendation at 9. Defendant Gocha argues that there is no evidence in the record that Lewis was an owner of any of the property. As Judge Zoss noted at the conclusion of the suppression hearing, "[i]t is all pretty muddy on this record as to actually who has what." Tr. at 147. The court concurs in that assessment. From the court's own review of the record, the court cannot determine who actually owned the property at 3009 360th Street, Osage, Iowa. It is clear from the record only that defendant Gocha, Niky Lewis and their son resided at the address on October 21, 2006. Therefore, defendant Gocha's objection is sustained.

13

### *11. Whether Gocha forbid the search of the shop*

Defendant Gocha next objects to Judge Zoss's finding that: "Gocha did not make any statements to the officers advising them that he did not want them to search his property." Report and Recommendation at 9. Although defendant Gocha testified that he told Deputy Beaver that he did not want anyone in his shop, Tr. at 134, Judge Zoss made a specific finding that he found this portion of defendant Gocha's testimony not to be credible and provided cogent reasons for his assessment. Report and Recommendation at 9. Defendant Gocha has not directed the court to anything in the record with would lead the court to disturb Judge Zoss's finding on this point. Therefore, Judge Zoss's finding is fully supported by the record, and this objection is also overruled.

### *12. The credibility of the Hermens*

Defendant Gocha next objects to Judge Zoss's finding that Aaron Hermen and Hilary Hermen were not credible with regard to their testimony about the scope of the protective search of the shop. Report and Recommendation at 9. Defendant Gocha's basis for this objection is that Judge Zoss did not explain why he found their testimony not to be credible. While this is true, the credibility of Aaron Hermen, a convicted felon, and Hilary Hermen, defendant Gocha's self-professed girlfriend, is clearly drawn into question by the fact that both invoked their right against self-incrimination under the Fifth Amendment to the United States Constitution multiple times when questioned about their respective involvement with drugs and their dealings with defendant Gocha. Tr. at 109, 110, 128, 129. Moreover, Hilary Hermen can, at best, speculate regarding the activities of the law enforcement officers during their protective sweep of the shop since she was hiding in the attic of the shop at the time. Accordingly, the court sees no reason to disturb Judge Zoss's factual finding on this matter. Therefore, this objection is also overruled.

14

### 13. *Lewis's statement regarding her access to the shop*

Defendant Gocha further objects to Judge Zoss's finding that Lewis made her statement about not being allowed in the shop only after law enforcement officers had begun their protective sweep of the shop and had found the box of contraband. Report and Recommendation at 9. Deputy Beaver noted in his affidavit in support of the search warrant application that: "Nicky stated to this deputy that she is not allowed to go into the shop west of her home." Gov't Ex. 5, Affidavit A. Although the record is, at best, murky about when Lewis told Beaver that she was not allowed into the shop, it is clear that Lewis had invited Deputy Beaver to search the shop within minutes of his arrival in order to remove any other people located in the shop. Tr. at 68. Given the close proximity in time between Deputy Beaver's arrival and Lewis's grant of permission, the court concludes that it is more likely that Lewis disclosed the restrictions on her access to the shop only after law enforcement officers had began their protective sweep of the shop and had found the box of contraband. Moreover, if it was otherwise, and Lewis had specifically told Deputy Beaver that her access to the shop was substantially restricted before the search had begun, the court has grave doubts that a law enforcement officer with Deputy Beaver's experience would have proceeded to search the shop without a search warrant or defendant Gocha's express permission to search. Therefore, this objection is also overruled.

### C. *Objections To Legal Conclusions*
### 1. *Officers' belief that Lewis had apparent authority*

Defendant Gocha objects both on a legal and factual basis to Judge Zoss's finding that the officers conducting the protective sweep of the shop believed Lewis had apparent authority over the entire premises, including the shop. The Fourth Amendment of the United States Constitution, generally, requires that a warrant be issued by a neutral

15

magistrate on probable cause before an item can be searched or seized. *United States v. James*, 353 F.3d 606, 613 (8th Cir. 2003); *see United States v. Weston*, 443 F.3d 661, 667 (8th Cir. 2006). However, several exceptions to the warrant requirement exist. *James*, 353 F.3d at 613; *United States v. Riedesel*, 987 F.2d 1383, 1388 (8th Cir.1993). Where the government seeks to rely on one of these exceptions, it bears the burden of demonstrating existence of that exception. *James*, 353 F.3d at 613; *Riedesel*, 987 F.2d at 1388. Consent to search is one of the valid exceptions to the warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *Weston*, 443 F.3d at 667; *United States v. Fleck*, 413 F.3d 883, 891 (8th Cir. 2005); *James*, 353 F.3d at 613; *see also United States v. Uscanga-Ramirez*, 475 F.3d 1024, 1027 (8th Cir. 2007); *United States v. Elam*, 441 F.3d 601, 603 (8th Cir. 2006); *United States v. Pennington*, 287 F.3d 739, 746 (8th Cir. 2002). Consent "may be given either by the suspect or by some other person who has common authority over, or a sufficient relationship to, the premises to be searched." *Weston*, 443 F.3d at 667 (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974)); *see United States v. Hilliard*, ---F.3d ---, 2007 WL 1713315, at *2 (8th Cir. June 15, 2007) ("Valid consent to search may be given by 'a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.'") (quoting *Matlock*, 415 U.S. at 171); *Fleck*, 413 F.3d at 891 ("'The government may obtain consent for a warrantless search from the defendant or from a third party who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected.'") (quoting *United States v. Czeck*, 105 F.3d 1235, 1239 (8th Cir. 1997)). "A warrantless entry is valid when based on consent of a third party whom police, at the time of entry, reasonably believe possesses common authority over the premises." *United States v. Janis*, 387 F.3d 682, 686 (8th Cir. 2004) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990)); *see also United States v. Hinkle*, 456 F.3d 836,

16

840 (8th Cir. 2006) ("A third party with 'common authority' over a property, or a third party that a government agent reasonably believes has 'common authority' over a property, may voluntarily consent to a search."). This is so even if the third party lacked the requisite common actual authority, so long as the police reasonably believed the consent was valid. *See Illinois v. Rodriguez*, 497 U.S. 177, 188-89 (1990); *Hilliard*, ---F.3d ---, 2007 WL 1713315, at *2 ("Even if the third party lacked the requisite common authority, the Fourth Amendment is not violated if the police reasonably believed the consent was valid."); *see also Elam*, 441 F.3d at 603.

In *Rodriguez*, the United States Supreme Court instructed that the determination of consent

> must 'be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises?

*Rodriguez*, 497 U.S. at 188 (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Hilliard*, ---F.3d ---, 2007 WL 1713315, at *2 ("In such a case, the critical inquiry is whether the facts available to the police at the time the consent is given would warrant a person of reasonable caution to believe the consenting party had authority over the place to be searched. "). In *Rodriguez*, the defendant's girlfriend, who had not lived at the residence which was the subject of the search for several months, volunteered to take law enforcement officers to what she called "our" apartment so they could arrest the defendant for assaulting her. *Rodriguez*, 497 U.S. at 179. The law enforcement officers did not inquire as to whether the girlfriend still resided there, but instead followed her to the apartment, at which time she gave them permission to enter and they then arrested the defendant. *Id*. at 180. The Supreme Court ruled the evidence seized did not have to be

17

suppressed because the police reasonably, even though incorrectly, believed that the girlfriend had authority to consent to entry and search of the premises. *Id*. at 185-86.

Here, given the totality of the circumstances in this case, the court concludes that the law enforcement officers' belief that Lewis had authority to consent to the search of the shop was reasonable. As noted above, the court has sustained Judge Zoss's finding that Lewis made her statement about not being allowed in the shop only after law enforcement officers had begun their protective sweep of the shop and had found the box of contraband. At the time the officers began their protective sweep, at least in part at the specific request of Lewis, who wanted any other individuals found in the shop removed from the property, both Deputy Beaver and Trooper McNally viewed Lewis as being the common law wife of defendant Gocha. *See* Tr. at 31, 71. In addition, Deputy Beaver thought that Lewis and Gocha had been in a relationship with each other for six years and had one child together.[3] Tr. at 33. Moreover, Lewis acted like someone with authority over the premises when she told Deputy Beaver that there were people in the shop and that she wanted them removed. Tr. at 38. Finally, for the reasons outlined above, the court has sustained Judge Zoss's finding that defendant Gocha did not make any statements to the officers forbidding them to search the shop. Thus, considering the totality of the circumstances in the record evidence before it, the court finds that the officers conducting

---

[3] Deputy Huftalin testified at the suppression hearing that he knew that Lewis and Gocha were in a relationship but did not consider it to be what he deemed "a legal marriage." Tr. at 9. The court is unsure by Deputy Huftalin's cryptic statement if he viewed Lewis and Gocha as being in a common law marriage, one which he believed did not constitute a "legal marriage" or if he simply believed that Lewis and Gocha were not married, common law or otherwise. The court notes that, under Iowa law, two forms of marriage are recognized. One is ceremonial and is governed by Iowa state statute. The other form of marriage is an informal type known as a common law marriage. *See In re Marriage of Martin*, 681 N.W.2d 612, 617-18 (Iowa 2004).

the protective sweep of the shop reasonably believed that Lewis had apparent authority over the entire premises, including the shop. Therefore, this objection is overruled.

### 2. *Gocha's arguments regarding search warrants*

Defendant Gocha's final objection is that Judge Zoss did not address in his Report and Recommendation defendant Gocha's contentions that the second and third search warrants were overbroad and failed to satisfy the Fourth Amendment's particularity requirements. This objection is sustained. Therefore, the court will remand this matter to Judge Zoss for the submission of a supplemental report and recommendation with respect to these issues.

### III. CONCLUSION

Therefore, for the reasons set out above, the court, upon a *de novo* review of the record, accepts that portion of Judge Zoss's Report and Recommendation which pertains to the initial search of the shop and **denies** that portion of defendant Gocha's Motion To Suppress. However, this matter is remanded to Judge Zoss for consideration, the holding of any necessary hearings, and the submission of a supplemental report and recommendation with respect to defendant Gocha's contentions that the second and third search warrants were overbroad and failed to satisfy the Fourth Amendment's particularity requirements.

**IT IS SO ORDERED.**

**DATED** this 8th day of August, 2007.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA