# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>LESLIE GOCHA,<br><br>    Defendant. | No. CR07-2006-MWB<br><br>**SUPPLEMENTAL<br>REPORT AND RECOMMENDATION<br>ON MOTION TO SUPPRESS** |

_____

On April 19, 2007, the grand jury returned a Superseding Indictment charging the defendant Leslie Gocha with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846; being an unlawful user of controlled substances in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3); and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (*See* Doc. No. 13, Superseding Indictment.) On June 1, 2007, Gocha filed a motion to suppress and a request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). (Doc. No. 22.) The plaintiff (the "Government") resisted the motion on June 16, 2007. (Doc. No. 26.) The undersigned held a hearing on the motion on June 25, 2007, and issued a Report and Recommendation on July 3, 2007, recommending that the motion to suppress be denied. (Doc. No. 32)

On August 8, 2007, Judge Mark W. Bennett issued an order (Doc. No. 60) adopting the undersigned's recommendation as to the first of the three search warrants challenged by Gocha, but remanding the matter to the undersigned for the filing of a supplemental Report and Recommendation as to Gocha's motion to suppress the second and third search warrants. The undersigned adopts the factual recitation set forth in the previous Report

and Recommendation on Gocha's motion to suppress, except to the extent Gocha's objections to the facts were sustained by Judge Bennett. (*See* Doc. Nos. 32 & 60)

In Gocha's motion to suppress, he stated "probable cause for issuance of the second warrant (search warrant number 2) arose from the issuance and execution of defective search warrant number 1, as well as the warrantless searches of [Gocha's] residence and business, and [was] therefore tainted by the prior illegality of the earlier searches." (Doc. No. 22 at 4) Gocha further stated "the application for search warrant number 3 . . . as with search warrant number 2, was based on the results of the warrantless searches and resulting defective search warrants numbers 1 and 2. Search warrant number 3 was therefore tainted by the prior illegality of the earlier searches, and was similarly overbroad and lacking the requisite particularity." (Doc. No. 22 at 4-5; *see also* Doc. No. 22-3 at 13, in which Gocha argued, "Because probable cause for the second and third search warrants was obtained as a result of the first defective search warrant, the second and third warrants are fatally flawed and 'fruit' obtained during their execution is rendered inadmissible." (Citations omitted.))

At the hearing on Gocha's motion to suppress, his counsel reiterated that if the warrantless searches were suppressed, and if the boilerplate marijuana attachment that was erroneously attached to the first warrant application was excised, then the subsequent search warrant applications would be devoid of probable cause. (Tr. at 158, lines 3-10)

As noted above, Judge Bennett adopted the undersigned's recommendation that Gocha's motion to suppress be denied with regard to evidence resulting from the first search warrant and the previous warrantless searches. Because, as Gocha acknowledges, the second and third search warrants were based on the results of the warrantless searches and the first search warrant, it follows that Gocha's argument that the second and third search warrants were "fruit of the poisonous tree" must fail.

2

Gocha also argues, however, that the second and third search warrants were overly broad and lacking in sufficient particularity, especially "insofar as they sought information from Gocha's computers, Palm Pilot, and digital camera in an unrestricted fashion that permitted the very 'rummaging' prohibited by the Constitution." (Doc. No. 38 at 10, citing Doc. No. 22 at 14-18)

The second warrant application was submitted to a Mitchell County magistrate judge on November 17, 2006. (*See* Doc. No. 26-9) The application sought authority to search/seize the following "personal property and other items" located at the residence shared by Gocha and Niky Lewis:

> 1. A DELL lap top computer #X08-73061, a Windows XP Home Edition HP # CNF 4491YK7, a DELL lap top computer # CN-OF3553-12961-481-4507, a Hewlett Packard lap top #CNF5211FXN, a home made computer with no numbers being black in color, a home made computer with no numbers being green in color, a XBADE computer #556794GR2331, and a DELL Windows XP Home Edition #X10-60264. Any and all documentation and records, whether on paper or stored on optical or magnetic media (including information stored within a computer), disclosing, describing, referring, reflecting, or adverting to include but not limited to the sale, possession[,] manufacturing and or distributing of controlled substances, associated BIOS, driver software programs, and all peripheral equipment (LCD/CRT controller, modems, printers, scanners, video cameras/camcorders/VCRS, and other image capturing/reproducing devices).
>
> 2. Computer hardware, software and data including, but not limited to[,] central processing units (CPU's), hard disks, hard disk drives, floppy disk drives, tape drives, CD-ROM drives, display screens, keyboards, printers, modems, scanning devices, video cameras/camcorders/VCRS, and other image capturing/reproducing devices, magnetic tapes, cassette tapes, compact disks, thumb drives, removable USB storage devices, personal digital assistants (PDA), electronic organizers and floppy disks found together or separately from one another.
>
> 3. Written documentation, whether typed or hand written, including, but not limited to, computer manuals and instructions for the use of any computers and their accessories found at the premises.

3

4. Any and all documentation and records, whether on paper or stored on computer media (including information stored within a computer), disclosing, describing, referring, reflecting, or adverting to contemplated, present or previous agreements, arrangements, inquiries or discussions by Leslie Robert Gocha or Niky Lynn Lewis with any individual or entity concerning: the selling, manufacturing, marketing, transferring, providing, furnishing or sampling of all controlled substances or documents, records, images, magnetic media (including information stored within a computer) or other items incorporating, or purportedly compatible with the recording, sending, receiving, reproducing and viewing of any and all controlled substances and paraphernalia. Such information to be seized includes personal communications between individuals or entities who are not subject on the warrant, specifically including electronic communications residing on optical or magnetic media ("E-mail").

5. Any and all documentation and records, whether on paper or stored on magnetic media (including information stored within a computer), disclosing, describing, referring, reflecting, or adverting to contemplated, present or previous agreements, arrangements, inquiries, or discussions by Leslie Robert Gocha and Niky Lynn Lewis with suspected narcotics associates concerning: the selling, manufacturing, marketing, transferring, providing, furnishing, sampling, or examining of documents, records, images, magnetic media (including information stored within a computer) or other items incorporating, or purportedly compatible with the recording, sending, receiving, and or manufacturing of any and all controlled substances and related paraphernalia. Such information to be seized includes personal communications between individuals or entities who are not subject on the warrant, specifically including electronic communications residing on magnetic media ("E-mail").

6. Any and all documentation and records, whether on paper or stored on optical or magnetic media (including information stored within a computer), disclosing, describing, referring, reflecting, or adverting to contemplated, present or previous agreements, arrangements, inquiries, or discussions by Leslie Robert Gocha and Niky Lynn Lewis with any suspected narcotics associates concerning: the selling, manufacturing, marketing, transferring, providing, furnishing, sampling, or examining of documents, records, images, magnetic media (including information stored within a computer) or other items incorporating, or purportedly compatible with the recording, sending or manufacturing of any and all controlled

4

substances and related paraphernalia.  Such information to be seized includes personal communications between individuals or entities who are not subject on the warrant, specifically including electronic communications residing on magnetic media ("E-mail").

7. Evidence of occupancy and control of said premises, including but not limited to, utility company bills, internet provider bills or payments, cancelled mail envelopes, personal identification papers, photographs, rent receipts, and keys.

8. In a circumstance where the item seized may contain digital information i.e., computer, or other removable digital storage device, the peace officers are hereby authorized to make a bit by bit physical copy providing a digital image of said item.  This will be done in order to facilitate a forensic examination of the image in a laboratory setting without altering the original data.

(Doc. No. 26-9 at 1-2)

Deputy Greg Beaver of the Mitchell County Sheriff's Office supplied an Affidavit in support of the second warrant application.  In his affidavit, Deputy Beaver summarized his law enforcement experience and his experience in drug-related investigations.  Deputy Beaver stated the following with regard to his expectation that materials relevant to the investigation could be found within the personal property listed above:

4. The affiant and [other law enforcement officers and/or agents] have found through prior investigations, experience, and research, those involved in the drug trade almost always maintain and possess records of their active drug trade.  Materials such as: photographs, magazines, negatives, films, video tapes, files, correspondence, mailing lists, books, tapes, recordings, and catalogs.  These materials are stored in a secure but accessible location, which is within their immediate control, such as in the privacy and security of their own homes.  If privacy within their residence can not be assured, they will seek a secure, accessible location near by, such as on their person or in their personal effects, their automobile, safe deposit boxes, or locked shed.  In addition to narcotics records those involved in the drug trade often times maintain photographs of associates relating to the use of, distribution of or proceeds from the sale of narcotics.  It is also common that those involved in the drug trade retain proceeds from the sale of narcotics.  It is also common that those involved in the drug trade retain material including

5

related correspondence, for many years. These individuals will rarely
voluntarily dispose [of] or depart [sic] with their materials, which are
considered treasured possessions and often times used for continued points
of distribution.

(Doc. No. 26-9 at 3)

Deputy Beaver then provided the following background of the current investigation:

On October 21st, 2006 the Mitchell County Sheriff's Office executed a
search warrant at 3009 360th St. Osage, Iowa. During the course of that
search warrant numerous computers, digital cameras, video recorders and
audio tapes were seized. In addition to the items mentioned suspected
controlled substances, cash and guns were seized. Often times those
involved in the drug trade will use videotape cassettes and digital media in
various ways. For example, such videotapes and digital media containing
associates and their drug use and or distribution may be stored within
multiple disks and cards designed to hold digital images. Based on the
affiant's training and experience, most individuals involved in drug
trafficking in a digital or video format will utilize store bought devices such
as smart cards, digital memory chips or disks to record, copy, or maintain
records of drug transactions.

    Consequently, in order to conduct a thorough examination of the
contents of the above mentioned digital camera it is necessary to examine the
contents of the camera in its entirety to include any smart cards or memory
devices designed to store images from a digital camera. As such, it is
requested that authority be granted to remove the digital camera and all
accompanying storage devices seized during the execution of the search
warrant by the Mitchell County Sheriff's Office on October 21, 2006 [for]
further examination.

    WHEREFORE, your affiant respectfully requests that a warrant be
issued authorizing the Mitchell County Sheriff's Office with appropriate
assistance with/from other law enforcement officers, to examine the digital
camera, any and all computers and storage media found on October 21st,
2006 by the Mitchell County Sheriff's Office.

(Doc. No. 26-9 at 3-4)

The state magistrate found probable cause and issued the warrant as requested on
November 17, 2006. On April 20, 2007, Deputy Beaver submitted another application for

6

search warrant (the third application). The application, supporting affidavit, and proposed warrant were identical to those submitted on November 17, 2006, except in one respect; i.e., in paragraph 1 of the warrant, the specific property to be searched/seized was described as follows: "A silver colored Palm Pilot with TEXAS INSTRUMENTS TECHNOLOGY OMAP appearing on the back." (Doc. No. 66, ¶ 1[1])

Gocha argues warrant applications two and three and the resulting warrants are defective in several respects. He argues that although Deputy Beaver stated generally that individuals involved in drug trafficking often utilize various types of digital or electronic media storage devices (*see* Doc. No. 26-9, ¶ 4, quoted above), "nowhere in the applications do officers allege that *Gocha* was suspected of possessing drug-related records, let alone records in a computer or electronic format." (Doc. No. 22-3 at 15; emphasis by the defendant) Gocha notes both warrant applications indicate the search warrants are necessary "in order to conduct a thorough examination of the contents of the above mentioned digital camera." (Doc. No. 26-9 at 3-4; Doc. No. 66 at 5-6; *see* Doc. No. 22-3 at 15) He argues the applications fail to allege that "investigators, in their experience and training, usually or routinely find drug-related records or evidence of drug activity in 'digital cameras' or in home computers." (Doc. No. 22-3 at 15-16)

Gocha further argues that even if probable cause existed for issuance of the warrants to search his computers, cameras, and Palm Pilot, the warrants themselves failed to contain "sufficient particularity to guide officers in their search for drug-related files," instead authorizing the search of all computers, data storage devices, and the like. (Doc. No. 22-3 at 16) He claims the overly-broad warrants, which failed to give officers any guidance as to the types of data that might contain drug-related information, "permitted the very

---

[1]The third search warrant, application, and supporting documents were not made part of the record at the suppression hearing. At the court's request, and with the defendant's consent, the plaintiff filed a supplement to its resistance on August 9, 2007, for the purpose of including the third search warrant and related documents in the suppression record. *See* Doc. No. 66.

7

overbroad 'rummaging' prohibited by the Constitution." (Doc. No. 22-3 at 17, citing *In the Matter of the Search of 3817 W. West End, First Floor, Chicago, Illinois*, 321 F. Supp. 2d 953, 959 (N.D. Ill. 2004) (the "*West End Search* case") (imposing search protocol for purpose of avoiding "a general rummaging through all information on the computer, much of which would be irrelevant to the alleged criminal activity").) Gocha asserts the warrants failed to contain an adequate description of the information sought to allow the officers "'to avoid searching and seizing the wrong items.'" (Doc. No. 22-3 at 18, quoting *United States v. Gleich*, 397 F.3d 608, 611 (8th Cir. 2005).)

The Government disputes Gocha's claim that the warrant applications contained no allegations that Gocha was engaged in drug-related activities, evidence of which might be found on his computers and media storage devices. The Government points to the first paragraph of the section of Deputy Beaver's affidavit describing the background of the current investigation, in which Deputy Beaver indicates "controlled substances, cash and guns" were seized in the first search, and the deputy states persons involved in the drug trade frequently "'use videotape cassettes and digital media in various ways . . . to record, copy, or maintain *records of drug transactions*.'" (Doc. No. 26-2 at 15, quoting the affidavit; emphasis by the Government) The Government further argues that although Deputy Beaver provided more detail in support of his request to search the digital camera and related storage devices than he provided regarding the request to search the computers and related storage devices, he nevertheless specifically requested authority to search "'*any and all computers and storage media*.'" (*Id.*)

In reviewing a warrant application, the task of the issuing judge is to make "a practical, common-sense decision whether, given all the circumstance set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *accord United States v. Olvey*, 437 F.3d 804, 807 (8th

8

Cir. 2006) (citing *Gates*, and *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)). "Probable cause is not a rigidly defined concept, for it depends on the totality of the circumstances and the specific facts in a given situation." *United States v. Bach*, 400 F.3d 622, 628 (8th Cir. 2005) (citing *Gates, supra*).

"[P]robable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence." *United States v. Searcy*, 181 F.3d 975, 981 (8th Cir. 1999); *accord United States v. Terry*, 305 F.3d 818, 822-23 (8th Cir. 2002). The Third Circuit Court of Appeals explained this consideration well in *United States v. Whitner*, 219 F.3d 289 (3d Cir. 2000):

> The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner. Statements in an affidavit may not be read in isolation – the affidavit must be read as a whole. Furthermore, the issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.

*Whitner*, 219 F.3d at 296 (internal citations and quotations omitted).

In the present case, the deputy's affidavit contained background information indicating Deputy Beaver is experienced and well-qualified in the investigation of drug-related crimes. The court finds the issuing judge was entitled to rely on the officer's experienced opinion that it was likely Gocha would maintain records and images relating to his drug activities on his personal computers, cameras, and storage devices. (*See* paragraphs 4-6 of the affidavit, in which the deputy listed in detail the various types of computer peripherals and storage devices that might contain incriminating evidence.) The fact that the deputy offered additional detail about why evidence might be found on the digital camera and digital storage media is not difficult to comprehend; the reason that

9

someone involved in drug transactions would maintain photographs and videos of their associates and drug-related activities is not as commonly known as is the maintenance of drug notes and transaction records in text form.

Viewing the affidavit as a whole, the court finds the warrant applications provided probable cause for issuance of the warrants to search Gocha's computers, digital cameras, Palm Pilot, and media storage devices, and it was reasonable for the issuing magistrate to conclude evidence of Gocha's drug activities would be found in or on those items. Furthermore, the officers' conduct was exemplary in seeking to obtain the third search warrant for the Palm Pilot, in an abundance of caution to ensure the device was covered by the scope of a search warrant.

With regard to Gocha's claim that the warrants were defective because they failed to provide adequate guidance to the officers regarding the specific information being sought, the Government cites the recent Eighth Circuit case of *United States v. Summage*, 481 F.3d 1075 (8th Cir. 2007), in which the court rejected the type of reasoning used by the court in the *West End Search* case cited by Gocha. In *Summage*, the defendant, charged with producing and possessing child pornography, challenged a warrant that listed the property to be seized in a general manner, including: "[a]ll videotapes and DVD's"; "pronographic (sic) pictures"; "[a]ll video and/or digital recording devices and equipment"; "[a]ll equipment that is used to develope [sic] and/or upload/download photographs and/or movies" and "computer(s)." *Summage*, 481 F.3d at 1077.

In finding the warrant to be sufficiently particular with regard to the items to be seized, the *Summage* court recognized that at the time officers apply for a warrant, they often know only that potentially incriminating evidence is likely to exist; they do not know the particular electronic format in which the evidence may be maintained by the suspect. *See Summage*, 481 F.3d at 1079. Although *Summage* was decided in a different context, the same reasoning applies here. The officers in this case had no knowledge of the

10

particular form in which Gocha might be maintaining evidence of his drug activities, requiring them to search the entirety of Gocha's computer files, digital media, and storage devices. Given the multiple types of evidence and means of storage described by Deputy Beaver in his affidavit, it is difficult to imagine how the warrants could have met the level of particularity Gocha seems to suggest. As the *Summage* court observed, "[t]he requirement of particularity must be assessed in terms of practicality." *Id*. The court finds search warrants two and three met the particularity requirement and were not overly broad.

For these reasons, the undersigned respectfully recommends that Gocha's motion to suppress be **denied** with regard to the second and third search warrants.

Any party who objects to this report and recommendation must serve and file specific, written objections by **August 16, 2007**. Any response to the objections must be served and filed by **August 20, 2007.**

**IT IS SO ORDERED.**

**DATED** this 10th day of August, 2007.

*/s/ Paul A. Zoss*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT